## STATE OF CONNECTICUT v. ANTHONY JONES
### (AC 19056)

Lavery, C. J., and Landau and Hennessy, Js.

---

Argued May 31—officially released September 12, 2000

*Richard W. Callahan*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Gerard Eisenman*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Anthony Jones, appeals from the judgment of conviction, rendered after

a jury trial, of larceny in the first degree in violation of General Statutes §§ 53a-119 and 53a-122 (a) (3), and robbery in the second degree in violation of General Statutes § 53a-135 (a) (1), and of being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a). The defendant claims that the trial court improperly (1) denied his motion to suppress identification evidence and (2) failed to grant his motions for judgment of acquittal on the charge of larceny in the first degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 24, 1998, between 1:30 a.m. and 1:45 a.m., the victim, Ladislav Konecny, picked up a prostitute while returning home from visiting friends. He later dropped her off at the grocery store in Bridgeport where he had picked her up. As she left his car, she grabbed his purse, which contained his wallet, credit cards, checkbook and the keys to his house. The victim chased the woman, who ran behind the market. The victim caught her there and retrieved his purse. As the victim was walking to his car, he saw five men walking toward him. He ran but the men surrounded him. The defendant, one of the group of five, demanded the victim's purse and the victim gave it to him. The men then beat the victim and told him to run. Upon finding that his car had been stolen, the victim went back to the area where his purse had been taken, and the only two remaining men told him to run away. The victim ran to a police station to report the incident.

Later that morning, the victim and a friend returned to the area and, upon seeing the prostitute and his car, informed the police. Police Officer Donna Stewart of the Bridgeport police department drove the victim to the area where he had seen the prostitute. The prostitute directed Stewart and the victim to Coleman and Washington Streets. Upon arriving in that area, the vic-

tim saw his stolen car with the defendant inside it. As Stewart drove closer, the defendant got out of the car and started talking to Stewart. It was during this time that the victim recognized the defendant as the man who had robbed him earlier. The defendant proceeded to run away from Stewart and was apprehended by other police officers. A pat-down of the defendant revealed the victim's wallet in his rear pocket, and the victim's purse was found in the front seat of the car.

## I

The defendant first claims that the court improperly failed to suppress identification testimony of the victim. Specifically, the defendant contends that the evidence at the suppression hearing showed that the victim identified the defendant as a result of a procedure that was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification. The defendant claims that the victim did not identify him until the police brought the defendant to the police car that the victim was seated in and produced the victim's wallet from the defendant's pocket. The defendant contends that this was an unnecessarily suggestive one-on-one show-up and pat-down.[1]

The fourteenth amendment to the United States constitution provides in relevant part that "[n]o State shall . . . deprive any person of life, liberty or property, without due process of law . . . ." U.S. Const., amend XIV. The due process clause requires the exclusion of evidence concerning a pretrial identification when the

---

[1] There is conflicting testimony between the victim and Stewart. The victim testified that he identified the defendant after the defendant got out of the stolen car. Stewart testified that the victim blurted out that the defendant was the one who robbed him when he saw him in the car. While the defendant claims that Stewart initially testified that the victim made no identification, Stewart reread her police report while on the witness stand and corrected her testimony. In either of these scenarios, the victim identified the defendant of his own accord without any action or questions by Stewart or anyone else.

identification procedure used "was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification." (Internal quotation marks omitted.) *State* v. *Anderson*, 178 Conn. 287, 291, 422 A.2d 323 (1979).[2]

"[I]t is well established that conduct that may fairly be characterized as state action is a necessary predicate to a challenge under the due process clause . . . ." *State* v. *Holliman*, 214 Conn. 38, 45, 570 A.2d 680 (1990). If an identification of a defendant is done spontaneously and is not arranged by the police, the identification is not tainted by state action and due process rights are not violated. See *State* v. *Watson*, 50 Conn. App. 591, 602, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999); *State* v. *Henderson*, 37 Conn. App. 733, 740, 658 A.2d 585, cert. denied, 234 Conn. 912, 660 A.2d 355 (1995); *State* v. *Nims*, 8 Conn. App. 631, 637, 513 A.2d 1280, cert. denied, 201 Conn. 812, 516 A.2d 887 (1986).

In the present case, there was no police conduct leading to the identification of the defendant. The victim pointed out the stolen car to the police and blurted out that the defendant was the man who had robbed him. Because the identification did not result from an official procedure subject to the strictures of due process, the court properly denied the motion to suppress the victim's identification of the defendant.

---

[2] "In determining whether identification procedures violate a defendant's due process rights, [t]he required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances. . . . To prevail in his claim, the defendant must demonstrate that the trial court erred in both of its determinations regarding suggestiveness and reliability of identifications in the totality of the circumstances." (Internal quotation marks omitted.) *State* v. *Mills*, 57 Conn. App. 356, 360, 748 A.2d 891 (2000).

## II

The defendant also claims that the court improperly failed to grant his motions for judgment of acquittal on the charge of larceny in the first degree.[3] Specifically, he argues that there was insufficient evidence to prove that he stole the vehicle the night the victim was robbed and that the market value of the stolen vehicle exceeded $10,000.[4]

"Our Supreme Court has stated: In reviewing [a] sufficiency [of evidence] claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Radzvilowicz*, 47 Conn. App. 1, 16, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997).

"The evidence must be construed in a light most favorable to sustaining the jury's verdict. *State* v. *Carter*, [196 Conn. 36, 44, 490 A.2d 1000 (1985)]. It is within

---

[3] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny as defined in section 53a-119 and . . . (3) the property consists of a motor vehicle, the value of which exceeds ten thousand dollars . . . ."

[4] The defendant filed motions for judgment of acquittal after the state's case-in-chief and after all of the evidence was submitted. "The reviewability of the defendant's case-in-chief sufficiency claim is barred because of the 'waiver rule' . . . ." *State* v. *Spillane*, 54 Conn. App. 201, 206, 737 A.2d 479, cert. granted on other grounds, 251 Conn. 914, 740 A.2d 866 (1999). "[I]n the defendant's election, after the denial of his motion for judgment of acquittal at the end of the state's case-in-chief, to proceed and put on his own evidence, he waived his right to appellate review of the sufficiency of the evidence at end of the state's case-in-chief." Id. Therefore, " 'appellate review encompasses the evidence in toto.' " Id.

the province of the jury to draw reasonable and logical inferences from the facts proven. Id.; *State* v. *Williams*, 169 Conn. 322, 336, 363 A.2d 72 (1975). The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. *State* v. *Williams*, 202 Conn. 349, 355, 521 A.2d 150 (1987); *State* v. *Carter*, supra, 44–45; *State* v. *Gabriel*, 192 Conn. 405, 425, 473 A.2d 300 (1984). . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994). We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson*, 213 Conn. 243, 254, 567 A.2d 1173 (1989). *State* v. *Lago*, 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 828 (1992). . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992)." (Citations omitted; internal quotation marks omitted.) *State* v. *Rozmyslowicz*, 52 Conn. App. 149, 152–53, 726 A.2d 142 (1999).

## A

The defendant claims that there was insufficient evidence that he stole the vehicle on the night the victim was robbed. The defendant argues that except for the two men who remained in the parking lot, any number of people other than the defendant could have stolen the car. According to the defendant, the state's failure to show that he intended to or did steal the car required

that the motion for acquittal on the larceny charge be granted.

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Citation omitted; internal quotation marks omitted.) *State* v. *Booth*, 250 Conn. 611, 656, 737 A.2d 404 (1999), cert. denied sub nom. *Brown* v. *Connecticut*, 529 U.S. 1060, 120 S. Ct. 1568, 146 L. Ed. 2d 471 (2000).

On the basis of the evidence presented and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the defendant intentionally stole the vehicle from the victim. The victim testified that the defendant was one of the males who had initially confronted him. The victim was then beaten and told to leave. He did not identify any of the individuals who were still there after he had been beaten nor did he know how many remained when he ran to his car. When the victim returned to the scene of the beating, the defendant was no longer there. The jury could infer from the defendant's absence that he took the vehicle while the victim was being beaten. Finally, the jury had direct evidence that the defendant was in possession of the vehicle later that same morning. We conclude, therefore, that the jury could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt.

B

The defendant also claims that the state failed to prove that the stolen vehicle had a value that exceeded

$10,000 at the time it was taken, as is required by § 53a-122 (a) (3).

In establishing the value of the stolen items, the state is required to prove "the market value of the property . . . at the time and place of the crime . . . ." General Statutes § 53a-121 (a) (1). "Market value has been defined as the price that would in all probability . . . result from fair negotiations, where the seller is willing to sell and the buyer desires to buy." (Internal quotation marks omitted.) *State* v. *Collette*, 199 Conn. 308, 313, 507 A.2d 99 (1986). "The determination of value is a question for the trier of fact." Id., 314.

Stewart testified that the vehicle that had been stolen was a 1998 grey, four-door Mercury Mystique. Connecticut State Trooper Christopher McCarthy is assigned to the automobile theft unit and places values on cars. He testified that the value of the vehicle at the time of the crime, September, 1997, was $16,235. He also testified that the value of a 1997 Mercury Mystique was $14,775. In assessing the value of the car, McCarthy used a book printed by the National Automobile Dealers Association referred to as the "blue book."

The defendant claims that McCarthy's values were for new vehicles rather than for used vehicles, such as the vehicle in the present case. After stating the values, however, McCarthy was asked, "And these values, would the vehicles have been worth this much in September of 1997?" McCarthy replied, "Yes." McCarthy also stated that the condition of the vehicle could change this evaluation. There was, however, no evidence offered that would reduce its value to an amount less than $10,000. Accordingly, we conclude that there was sufficient evidence for the jury to conclude that the value of the stolen vehicle exceeded $10,000.

The judgment is affirmed.

In this opinion the other judges concurred.