# STATE OF CONNECTICUT *v.* LUIS CARRASCO
## (SC 16333)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued November 27, 2001—officially released March 5, 2002

*Neal Cone,* senior assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Michael Gailor,* assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The sole issue in this direct criminal appeal is whether the trial court's decision sustaining the state's exercise of a peremptory challenge to remove a venireperson deprived the defendant of his right to an impartial jury in violation of article first, § 8, of the Connecticut constitution.[1] Specifically, the defendant claims that the removal of the first Hispanic male venireperson eligible to serve on the petit jury improperly deprived the defendant, who is also a Hispanic male, of a fair opportunity to select a jury composed of a representative cross section of the community. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 26, 1994, at approximately 8:35 p.m., the defendant, Luis Carrasco, arrived at a housing project in Hartford and attempted to sell to the victim, Jose Vasquez Molina, a bundle of napkins assembled to resemble a package of heroin. An argument over

---

[1] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to . . . trial by an impartial jury. . . ." See *State* v. *Griffin,* 251 Conn. 671, 697, 741 A.2d 913 (1999) (stating article first, § 8, of Connecticut constitution encompasses American tradition of trial by jury, which contemplates impartial jury drawn from cross section of community).

payment for the package erupted, a scuffle ensued, and the defendant fatally shot the victim once in the chest.

The record reveals the following relevant procedural history. The state charged the defendant in a substitute information with murder in violation of General Statutes § 53a-54a,[2] felony murder in violation of General Statutes § 53a-54c,[3] robbery in the first degree in violation of General Statutes § 53a-134,[4] and criminal use of a firearm in violation of General Statutes § 53a-216.[5]

---

[2] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[4] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[5] General Statutes § 53a-216 (a) provides: "A person is guilty of criminal use of a firearm or electronic defense weapon when he commits any class A, B or C or unclassified felony as defined in section 53a-25 and in the commission of such felony he uses or threatens the use of a pistol, revolver, machine gun, shotgun, rifle or other firearm or electronic defense weapon. No person shall be convicted of criminal use of a firearm or electronic

The defendant pleaded not guilty to all of the charges and elected a trial by jury.

Jury selection commenced on September 27, 1999. Eight venire panels were drawn from the Hartford judicial district, from which twelve jurors and three alternates ultimately were selected to serve on the jury.[6] When each panel was first brought into the courtroom, the trial court provided the venirepersons with the names of the parties, the attorneys, and the potential witnesses, and requested that any venireperson who believed that this information would compromise his or her ability to serve impartially alert the court.

On October 5, 1999, in response to these instructions, a venireperson on the fifth panel, R.R.,[7] raised his hand. R.R., a Hispanic male, was the first Hispanic venireperson who was eligible to serve on the defendant's jury.[8] Thereafter, during individual voir dire, R.R. explained that he had raised his hand because he thought that he had read about the crime in the newspaper when the incident first occurred, that the defendant "look[ed] familiar" to him and that, although he had "never met him," he had "seen [the defendant] most likely in the streets." R.R. further indicated that his recollection of the crime from the newspaper would not affect his ability to be impartial and that, although he recognized the defendant "in a positive way," "if he's guilty, he's guilty . . . ." Thereafter, R.R. returned to

---

defense weapon and the underlying felony upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

[6] None of the alternate jurors ultimately were required to serve on the petit jury.

[7] We refer to the venireperson by his initials in order to protect his privacy. *State* v. *Rigual*, 256 Conn. 1, 5 n.6, 771 A.2d 939 (2001).

[8] The fourth venire panel contained one Hispanic male, however, he was ineligible to serve on the defendant's jury because of a prior military commitment that required him to leave the country before the completion of the defendant's trial.

the jury room, and the state asserted that R.R. should be excused for cause. The defendant disagreed, and the court ordered that R.R. return the following day for further questioning.

When voir dire of R.R. resumed the next day, he stated that he had thought overnight about his familiarity with the defendant and thought that he may have known the defendant's family approximately twenty-seven or twenty-eight years prior. He further elaborated that this knowledge would "make it a little bit harder" to return a guilty verdict, but that if the state proved its case, he "[didn't] think it [would] take [him] out of [his] actual duty as a juror to convict [the defendant]."

Thereafter, R.R. again retired to the jury room. The defendant stated that R.R. was an acceptable juror, but the state exercised a peremptory challenge to remove him. The defendant challenged the state's exercise pursuant to *Batson* v. *Kentucky*, 476 U.S. 79, 96–98, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), claiming that R.R. was "the first Hispanic venireperson that [the parties had] questioned and that . . . there just [hadn't] been enough people up to [that] point . . . to take a chance on letting [R.R.] go."[9] The state asserted that R.R.'s

---

[9] "In *Batson* . . . the United States Supreme Court recognized that a claim of purposeful racial discrimination on the part of the prosecution in selecting a jury raises constitutional questions of the utmost seriousness . . . [and] concluded that [a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his [or her] view concerning the outcome of the case to be tried . . . the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race . . . .

"Under Connecticut law, [o]nce a [party] asserts a *Batson* claim, the [opposing party] must advance a neutral explanation for the venireperson's removal. . . . The [party asserting the *Batson* claim] is then afforded the opportunity to demonstrate that the [opposing party's] articulated reasons are insufficient or pretextual. . . . [T]he trial court then [has] the duty to determine if the [party asserting the *Batson* claim] has established purposeful discrimination. . . . The [party asserting the *Batson* claim] carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was

admission that he might have more difficulty returning a guilty verdict because he possibly had known the defendant's family undermined R.R.'s impartiality, thereby motivating the state's decision to remove him from the panel. The trial court concluded that the state's peremptory challenge was race neutral, and overruled the defendant's *Batson* challenge. The court then called R.R. back to the courtroom and excused him from jury service in the present case.

Jury selection concluded on October 15, 1999. The petit jury was comprised of one white male, four white females, one Hispanic male, one Hispanic female, and two males and three females of unidentified race and ethnicity.[10] It is undisputed that the unidentified jurors were not Hispanic.

The jury returned a verdict finding the defendant guilty of felony murder, criminal use of a firearm, and the lesser included offense of attempted robbery in the first degree in violation of § 53a-134 and General Statutes § 53a-49.[11] See footnotes 2 through 5 of this opinion. The trial court vacated the conviction of criminal use of a firearm; see footnote 5 of this opinion; and rendered a judgment of guilty of felony murder and attempted robbery in the first degree, sentencing the

tainted by purposeful discrimination." (Citations omitted; internal quotation marks omitted.) *State* v. *Mukhtaar*, 253 Conn. 280, 283–84, 750 A.2d 1059 (2000). The defendant in the present case does not contest the trial court's determination that the state's peremptory challenge was race neutral.

[10] Three females, one white and the other two of unidentified ethnic or racial identification, composed the three alternate jurors.

[11] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

defendant to a total effective term of forty-eight years imprisonment. This appeal followed.

On appeal, the defendant contends that the fair cross section requirement pursuant to article first, § 8, of the Connecticut constitution is broader than that under the sixth amendment to the United States constitution,[12] and that his state constitutional right to a venire panel composed of a representative cross section of the community extends to the petit jury. The defendant claims, therefore, that this court should reverse his conviction because the state's exercise of a peremptory challenge to remove R.R., the first Hispanic male venireperson who was eligible to serve, deprived the defendant of a fair opportunity to select a jury composed of a representative cross section of the community.[13]

The defendant concedes that he did not assert this claim before the trial court and, therefore, may prevail on this claim only if he satisfies the criteria established by this court in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[14] We conclude that the record is

[12] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a . . . trial, by an impartial jury . . . ." See *Taylor* v. *Louisiana*, 419 U.S. 522, 528, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975) (stating "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial").

[13] In the alternative, the defendant claims that he was deprived of a fair opportunity to a jury composed of a fair cross section of the community because R.R. was the only "Puerto Rican . . . male" venireperson who was eligible to serve on the petit jury. The defendant conceded at oral argument, however, that he has no evidence to substantiate that R.R. was specifically Puerto Rican, rather than, more generally, Hispanic. Consequently, we consider the defendant's claim only as to R.R. having been the first Hispanic male venireperson eligible to serve.

[14] In order for a defendant to prevail on an unpreserved claim of constitutional error, the *Golding* test requires that the following conditions be satisfied: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged

inadequate for our review and, accordingly, the defendant's claim fails under the first prong of *Golding*.

The defendant's claim that the removal of R.R. improperly deprived him of a fair opportunity to select a petit jury composed of a representative cross section of the community necessarily is predicated on two legal assumptions: (1) that the defendant has a right under our state constitution to a petit jury comprised of a representative cross section of the community; and (2) that the fair cross section to which the defendant is entitled includes a certain number of Hispanic males. Therefore, before we consider the general issue of whether the fair cross section requirement under our state constitution extends to the petit jury, and, accordingly, the more specific issue of whether the removal of R.R. deprived the defendant of a petit jury composed of a fair cross section, we first must consider the narrower question of whether the defendant has established that the fair cross section to which he claims he is entitled necessarily includes a certain number of Hispanic males.

In order to establish a violation of his right to a fair cross section of the community, the defendant bears the burden of demonstrating the following: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren* v. *Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979);

constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 239–40.

*State* v. *Gibbs*, 254 Conn. 578, 588, 758 A.2d 327 (2000); *State* v. *Webb*, 238 Conn. 389, 450, 680 A.2d 147 (1996). In accordance with the first prong of this test, therefore, the defendant must demonstrate that Hispanic males constitute a distinctive group for purposes of fair cross section analysis. While this court previously has held that Hispanic persons, in general, comprise a distinctive group; see *State* v. *Gibbs*, supra, 588; we have never so held with the respect to the subcategory of Hispanic males, in particular. "While there is no precise definition of the term distinctive group . . . such a group must have, first, some factor which defines and limits the group; second, a basic similarity in attitudes or ideas or experience which is present in members of the group and which cannot be adequately represented if the group is excluded from the jury selection process; and third, there must be a possibility that exclusion of the group will result in partiality or bias on the part of juries hearing cases in which group members are involved." (Citation omitted; internal quotation marks omitted.) *State* v. *Tillman*, 220 Conn. 487, 496–97, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

In the present case, the defendant fails to allege directly that Hispanic males are a distinctive group.[15] Moreover, the record reveals no evidence, particularly no statistical or sociological data, demonstrating that Hispanic males share experiences, ideas or attitudes so distinct from Hispanic persons, in general, that their underrepresentation as jurors would tend to result in

---

[15] The defendant does assert that Hispanic males are a "cognizable group" for jury selection purposes. In support of this contention, he states that "[t]he concurrence of ethnic and gender identity is a definite composition and membership in such composite cannot be shifted day to day nor its members arbitrarily selected." We have stated previously, however, that "[t]here is a difference between a 'distinctive group' regarding the composition of the jury pool and a 'cognizable group' for jury selection purposes." *State* v. *McDougal*, 241 Conn. 502, 517, 699 A.2d 872 (1997).

bias and partiality on the part of juries hearing cases. We conclude, therefore, that the defendant has failed to satisfy his evidentiary burden under the first prong of the *Duren* test.[16]

Even if we were to assume, arguendo, that the defendant had established that Hispanic males constitute a distinctive group for fair cross section purposes, the defendant has failed to meet his evidentiary burden with respect to both the second and third prongs of the *Duren* test. The defendant has not proffered any evidence of the size of the class of Hispanic males in the Hartford judicial district. Therefore, we have no basis upon which to conclude whether the representation of Hispanic males in this case was unfair and unreasonable in relation to their representation in the community. Compare *State* v. *Castonguay*, 194 Conn. 416, 422, 481 A.2d 56 (1984) (prima facie showing of fair cross section violation successfully established through use of voter registration lists demonstrating proportions of Hispanic persons eligible to serve relative to Hispanic persons residing in relevant community) with *State* v. *Webb*, supra, 238 Conn. 452 (fair cross section claim based on lack of affluent individuals failed for lack of sufficient evidence when defendant did not present evidence of number of affluent individuals residing in relevant community) and *State* v. *Couture*, 218 Conn. 309, 316–17, 589 A.2d 343 (1991) (fair cross section

---

[16] There is some ambiguity with respect to the defendant's fair cross section claim as to whether he contends that he was deprived of an impartial jury solely because of an underrepresentation of the subcategory of Hispanic males, or, as he on occasion also asserts, because of an underrepresentation of Hispanics in general. In either regard, however, his claim fails under the second and third prongs of the *Duren* test; see *Duren* v. *Missouri*, supra, 439 U.S. 364; because he fails to establish either that Hispanics in general, or Hispanic males, in particular, are unfairly and unreasonably underrepresented in proportion to their representation in the community, or that either group is subject to systematic underrepresentation in the jury selection process.

claim for lack of Jewish jury members failed for lack of sufficient evidence when defendant did not present evidence of number of Jewish persons residing in particular judicial district). Similarly, the defendant has failed to allege or to provide evidence that Hispanic males have been excluded systematically in the jury selection process. See *State* v. *Tillman,* supra, 220 Conn. 498 (allegation of systematic exclusion insufficient without proof that questionable selection procedure actually followed); *State* v. *Couture,* supra, 317 (claim of systematic exclusion failed for lack of sufficient evidence when defendant could have, but failed to, offer evidence that Jewish persons, in fact, postponed jury service because of Passover).

"The defendant bears the burden of making an adequate record to support a challenge to a jury array. . . . A challenge to a jury array will fail if the defendant presents no evidence to the court." (Citations omitted.) *State* v. *Tillman,* supra, 220 Conn. 496. Moreover, "[a] representation by counsel does not meet this evidentiary requirement." Id. In the absence of evidence that the fair cross section to which the defendant claims he is entitled includes a requisite number of Hispanic males, we conclude that the defendant's claim that the state's exercise of a peremptory challenge to remove R.R., the first Hispanic male venireperson eligible to serve, deprived him of a representative cross section of the community on his petit jury in violation of our state constitution must fail under *Golding* for want of an adequate record.[17]

---

[17] Because the defendant has failed to provide an adequate record demonstrating that Hispanic males constitute a distinctive group and that the fair cross section to which he claims he is entitled includes Hispanic males, we do not reach the constitutional question that he has posited, namely, whether under our state constitution the fair cross section requirement extends to the petit jury. See *Bauer* v. *Waste Management of Connecticut, Inc.,* 234 Conn. 221, 230, 662 A.2d 1179 (1995), quoting *State* v. *Torres,* 230 Conn. 372, 382, 645 A.2d 529 (1994) ("[o]rdinarily, [c]onstitutional issues are not considered unless absolutely necessary to the decision of a case" [internal

The judgment is affirmed.

In this opinion the other justices concurred.

quotation marks omitted]). We note, however, without deciding, that the merit of the defendant's constitutional claim is dubious.