STATE OF CONNECTICUT *v.* WILLIE YOUNG
(AC 22860)

Foti, Schaller and Freedman, Js.

Argued December 9, 2002—officially released April 29, 2003

*Mary Anne Royle*, special public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio N. Vitale*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Willie Young, appeals from the judgment of conviction, rendered after a jury trial, of one count each of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and larceny in the second degree in violation of General Statutes § 53a-123 (a) (2), and two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). The defendant claims that (1) the court improperly permitted the state, during jury selection, to exercise a peremptory challenge in a racially discriminatory manner, (2) the prosecutor committed misconduct during rebuttal argument to the jury and (3) the court improperly denied the defendant's motion to suppress the in-court identification of him by a witness. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. At approximately 5:20 p.m. on December 12, 1999, two employees at the Family Dollar store in Hamden, Laura Chesmar and George Cole, were approached by the defendant as they were counting cash at the registers. The defendant ordered Chesmar and Cole to sit on the floor while he took cash from the registers. He then ordered them to accompany him to the back of the store, where he forced Cole at gunpoint to unlock the door to the store's back office. Once inside the office, the defendant forced Cole to retrieve approximately $8000 from a money box kept in a filing cabinet. He then bound Chesmar and Cole using electrical cords. They subsequently freed themselves and escaped to a

nearby restaurant, where they telephoned the police. Additional facts will be set forth as necessary.

I

The defendant claims that the court improperly permitted the state, during jury selection, to exercise a peremptory challenge in a racially discriminatory manner. Specifically, the defendant argues that the court, in considering his objection to the state's use of a peremptory challenge against a black venireperson, failed to apply the third prong of the test set forth in *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). The defendant further argues that the court improperly failed to make a finding of discrimination in light of what he claims was the prosecutor's disparate treatment of that black venireperson and a white venireperson with similar characteristics.

The following additional facts are relevant to the defendant's claim. During jury selection, the prosecutor questioned L,[1] a black male venireperson. In response to the prosecutor's questions, L stated that someone had once broken into his home and stolen some items. L also indicated that many of his acquaintances had been victims of crimes, including armed robbery, and that he had a good friend who was a convicted murderer. When the prosecutor asked L whether he would have any trouble making a decision as a juror in light of his familiarity with people on both sides of the law, L answered in the negative. In elaborating on his answer, however, L stated that "God is the final judge, so it's nothing on me." Later, during examination by defense counsel, L stated that "if [the defendant] is guilty and I see that he's guilty, then, you know, all I can do is pray for him, because God is his judge." Nevertheless, in response to questioning by both the prosecutor and

---

[1] In the interest of protecting the venireperson's privacy, we choose not to use his name.

defense counsel, L repeatedly stated that he thought he could put his personal beliefs aside and consider the case based on the judge's explanation of the law.

The state exercised a peremptory challenge to excuse L from the venire. The defendant objected and requested that the state give a race neutral reason for the challenge. In response, the state articulated two reasons for the challenge. First, the state noted that L had given contradictory and confusing responses regarding his ability to follow instructions inconsistent with his personal beliefs. Second, the state indicated that its decision was based on L's familiarity with both criminals and victims of crimes, and his friendship with a convicted murderer, in particular.

The defendant responded by arguing that the state's proffered reasons for exercising the peremptory challenge were pretextual. With regard to the state's first proffered reason, the defendant argued that L clearly had indicated that he could set his personal beliefs aside and decide the case according to the judge's instructions. As to the state's second proffered reason, the defendant argued that most young black men from New Haven know victims of crime and criminal defendants, and that allowing challenges on that basis would result in a situation in which the court would not "have . . . any sitting jurors that are young African-American males who live in New Haven." The court overruled the defendant's objection to the peremptory challenge, stating that "on this record, [the court is] not prepared to make a finding that the reasons given are pretextual."

A

The defendant first argues that the court, in considering his objection to the state's use of a peremptory challenge against L, failed to apply the third prong of the test, as set forth in *Batson* v. *Kentucky*, supra, 476 U.S. 79, for determining whether a peremptory chal-

lenge has been exercised in a discriminatory manner. We are not persuaded.

We begin by setting forth the proper standard of review. The defendant's argument requires that we determine whether the court applied the appropriate legal standard in evaluating his claim of discrimination. That issue presents a question of law, and our review is therefore plenary. See *Adams* v. *State*, 259 Conn. 831, 837, 792 A.2d 809 (2002).

*Batson* v. *Kentucky*, supra, 476 U.S. 96–98, "establishes a three-step procedure for evaluating claims that a prosecutor has used peremptory challenges in a manner violative of the equal protection clause. . . . First, the defendant must make a prima facie showing that the prosecutor has exercised a peremptory challenge on the basis of race. . . . In the second step, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. . . . The third step requires the defendant to show that the articulated reasons of the state are insufficient or merely pretextual." (Citations omitted.) *State* v. *Rodriguez*, 37 Conn. App. 589, 596–97, 658 A.2d 98, cert. denied, 234 Conn. 916, 661 A.2d 97 (1995). "The [party asserting the *Batson* claim] carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was tainted by purposeful discrimination." (Internal quotation marks omitted.) *State* v. *Carrasco*, 259 Conn. 581, 585–86 n.9, 791 A.2d 511 (2002).

After hearing the defendant's arguments as to why the state's proffered reasons for exercising the peremptory challenge were pretextual, the court stated only that it was "not prepared to make a finding that the reasons given are pretextual." It appears from that statement that the court concluded that the defendant had failed to carry his burden of showing that the state had pur-

posefully discriminated in exercising the peremptory challenge against L. It therefore appears that the court applied the proper *Batson* analysis in evaluating the defendant's objection to the state's peremptory challenge.

The defendant nevertheless urges us to conclude that the court failed to make the inquiry required under the third step of the *Batson* analysis because "[t]he record does not show that the court made a sufficient inquiry into why the prosecutor's explanation was race neutral." We note in that regard that "the appellant bears the burden of providing an appellate court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . [or] to clarify the legal basis of a ruling . . . ." (Citations omitted; internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 394, 757 A.2d 1074 (2000). We see no reason to depart from that well established rule in the present case. The defendant has failed to establish through an adequate record that the court failed to apply the appropriate legal standard.[2] In the absence of a motion for articulation, we will not assume that the court failed to apply the proper legal standard simply because it failed to articulate its reasoning. Consequently, on the basis of the record before us, we reject the defendant's argument that the court applied the incorrect legal standard.

B

The defendant next argues that the court improperly failed to make a finding of discrimination in light of

[2] Because the defendant claims only that the court did not apply the proper legal standard, we do not address whether the court properly concluded that the state's proffered reasons for exercising the peremptory challenge were not pretextual.

the prosecutor's disparate treatment of L and a white venireperson with similar characteristics. The defendant makes his argument for the first time on appeal and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3]

Our Supreme Court has stated that "[i]t would be both unfair and unreasonable to require the trial court to conduct a comparative evaluation of the backgrounds of venirepersons who have not been identified by the defendant in support of his *Batson* claim. Because a party is entitled to raise a *Batson* challenge at any time prior to the swearing in of the jury . . . there is no reason why the burden of identifying, with reasonable specificity, those venirepersons whose selection by the opposing party tends to support the moving party's *Batson* claim should be on the trial court, rather than on the party making the *Batson* claim. Moreover, because a claim of purposeful discrimination under *Batson* raises issues of fact to be decided by the trial court, the moving party's failure to inform the trial court of the full factual basis for the claim renders that claim unreviewable." (Citation omitted; internal quotation marks omitted.) *State* v. *Mukhtaar*, 253 Conn. 280, 289–90, 750 A.2d 1059 (2000). Accordingly, the defendant's disparate treatment claim is not reviewable pursuant to *Golding* because the record is inadequate. See *State* v. *Hodge*, 248 Conn. 207, 227, 726 A.2d 531, cert. denied, 528 U.S. 969, 120 S. Ct. 409, 145 L. Ed. 2d 319 (1999).

---

[3] In *Golding*, our Supreme Court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

## II

We next address the defendant's claim that the prosecutor committed misconduct during rebuttal argument. The defendant argues that the prosecutor violated his right to a fair trial by criticizing defense counsel's trial tactics.

The following additional facts underlie the defendant's claim. At trial, Chesmar and Cole both identified the defendant as the person who had robbed the Family Dollar store on December 12, 1999. Chesmar testified that earlier on the day of the robbery, she had seen the defendant in the store speaking with Wendell Gary, a store employee. During cross-examination, Chesmar could not recall the appearance of the defendant's clothing or hairstyle when she saw him prior to the robbery. Defense counsel also questioned both Chesmar and Cole regarding the extent to which they had discussed the robbery with one another.

During closing argument, defense counsel argued that Chesmar's and Cole's certainty regarding their in-court identifications of the defendant was not the result of their actual memory of the robber's appearance, but was instead the result of a number of factors, including earlier out-of-court identification procedures and their need to put the incident behind them. In addition, defense counsel argued that their memory of the robbery and of the robber's appearance may have been colored by the fact that they spoke to each other soon after the robbery. Defense counsel also suggested that Chesmar became convinced that the defendant was the robber because she had seen him in the store on the day of the robbery.[4]

---

[4] Defense counsel stated: "[I]t's common for all of us sometimes to transfer an image of an individual from one context to another. . . . And there are times when we have an image of an individual where we are sure we know them, and we transfer that image into a different time period or different context. And a lot of times that happens at or around the scenes of a crime where somebody sees somebody earlier in a store who's close to the

In rebuttal, the prosecutor argued that defense counsel was attempting to distract the jury from the witnesses' identification of the defendant. The prosecutor stated that defense counsel's approach was "to focus attention away from what the victims saw and heard, which began, I submit to you, during the cross-examination of [Chesmar and Cole] . . . . [B]ecause, as you recall, during the cross-examination, the questioning was not so much, 'Did you—were you looking at the person then? Did you stop then? What did you see?' No. The questioning was, for the most part, asking questions about, 'Who did you talk to? What was touched? What did you do later? Do you recall this? Do you recall that?' "

With regard to Chesmar's identification of the defendant, the prosecutor argued, "Of course, if Ms. Chesmar had ever said to the police in a statement, 'I'm unsure if I can make an identification,' or was hesitant or unsure or changed her accounts, changed her descriptions, which you never heard happen from any cross-examination here, counsel would stand up and say, 'Well, you can't trust the identification because she's not certain.' So, either the identifications by the witnesses are too certain or they're not certain enough. It's never that they're just right. It's either one or the other. Did Ms. Chesmar ever—and I think when you consider this and you consider her credibility, ask yourself if she ever attempted to gild the lily, and I mean by this—by that I mean this: What if she claimed to recall during cross-examination that when she saw the individual talking to Wendell Gary, who we now know was the defendant, that she could remember now the clothing he was wearing or the hairstyle, okay. Things of that nature. You would say to yourself, 'Well, she had no reason to pay attention to this person at the time. Why would she

description of the robber, who sees someone later in a crowd that's close to the description of a shooter. That's called 'image transferred.' "

remember that now?' It would seem kind of put on, and she didn't do that because of the fact she had no reason at that time when she saw who we now know was the defendant in the store to pay attention to him. And so these questions are designed on cross-examination to get her to do that, to kind of take the bait and say, 'Ah-hah!' There'd be no reason for her to remember any of that. And she didn't."

In addition, the prosecutor stated, "So, you know, I always love it when counsel stands up and says, 'Well, of course, you're going to make an in-court [identification].' That's always a favorite argument to make. If both these people saw the defendant in the store, it would seem to me you would all be wondering, 'Well, if this is the person, how come they're not being asked to identify him?' So, if that wasn't done, counsel stands up here and screams, 'You never heard, now that the witnesses saw the defendant in person, that they were asked to make an identification.' Then, when it's done, they say, 'Of course, he's going to be picked out. He's sitting at [the] counsel table.' So, either way, there's an argument that's going to be made . . . ."

In response to defense counsel's suggestion that the witnesses' memories of the robbery were distorted by their conversations with one another, the prosecutor stated, "And so what if they talked? That's the, I think, something you would think as friends and people who had been victimized they would do. And so the defense strategy also is to kind of set up false premises and argue, argue from that. And don't be fooled by that."

At the conclusion of the state's rebuttal argument, the defendant objected on the ground that the prosecutor had attacked defense counsel's handling of the case. The defendant requested a mistrial and, in the alternative, that the court instruct the jury that defense counsel's handling of the case was not a proper matter for

its consideration. The court denied both requests. Subsequently, the court, in its jury charge, instructed that statements and arguments of counsel are not evidence.

Our standard of review concerning claims of prosecutorial misconduct is well settled. "Our Supreme Court has previously acknowledged that prosecutorial misconduct can occur in the course of closing argument." (Internal quotation marks omitted.) *State* v. *Brown*, 71 Conn. App. 121, 126, 800 A.2d 674, cert. denied, 261 Conn. 940, 808 A.2d 1133 (2002). "[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Johnson*, 71 Conn. App. 272, 285, 801 A.2d 890, cert. denied, 261 Conn. 939, 808 A.2d 1133 (2002).

Our first step in analyzing the defendant's claim that the prosecutor committed misconduct during closing argument is to determine whether the challenged comments were improper. *State* v. *Brown*, supra, 71 Conn. App. 129. We previously have observed that "because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 358, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999).

Nevertheless, "[w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Consequently, the state must avoid arguments which are calculated to influence the passions or prejudices of the jury, or which would have the effect of diverting the jury's attention from their duty to decide the case on the evidence. . . . Furthermore, [t]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel." (Citation omitted; internal quotation marks omitted.) Id., 357–58. Accordingly, we have previously found impropriety in a prosecutor's statement that a particular argument by defense counsel was a " 'smoke screen' "; *State* v. *Brown*, supra, 71 Conn. App. 129; employed by all defense attorneys as a tactic to delude juries.

In light of our holding in *Brown*, the state concedes the impropriety of the prosecutor's comment that defense counsel's argument regarding in-court identification was "always a favorite argument" of defense attorneys. Additionally, we conclude that the prosecutor should not have speculated about the argument defense counsel would have made if Chesmar's identification of the defendant had been less certain. Although less explicit than the remarks in *Brown*, the prosecutor's statements that in-court identifications are "either . . . too certain or . . . not certain enough" and that "it's never that they're just right" implied that the jury should not take defense counsel's arguments seriously because defense attorneys always attack the reliability of identification evidence. It is improper for a prosecutor to tell a jury, explicitly or implicitly, that defense counsel is employing standard tactics used in all trials, because such an argument relies on facts not in evidence and has no bearing on the issue before the jury, namely, the guilt or innocence of the defendant.

The other comments challenged by the defendant were not improper. The prosecutor did not overstep the bounds of permissible argument by telling the jury not to be "fooled" by defense counsel's arguments or by stating that defense counsel's questions during cross-examination were designed to distract the jury from the real issues in the case. See *State* v. *Jenkins*, 70 Conn. App. 515, 536–38, 800 A.2d 1200 (statement to jury that defense counsel's argument was " 'part of diverting you from the facts because the facts require you to convict his client' " held not improper), cert. denied, 261 Conn. 927, 806 A.2d 1062 (2002).

Having concluded that some of the prosecutor's comments were improper, the second step of our analysis is to determine whether the defendant was substantially prejudiced by the misconduct. See *State* v. *Brown*, supra, 71 Conn. App. 129. In making that determination, we consider a number of factors, including the extent to which the misconduct was invited by defense conduct or argument, the severity of the misconduct, the frequency of the misconduct, the centrality of the misconduct to the critical issues in the case, the strength of the curative measures adopted and the strength of the state's case. *State* v. *Singh*, 259 Conn. 693, 700–701, 793 A.2d 226 (2002).

The state's case against the defendant was strong, as it was based on the testimony of Chesmar and Cole, both of whom saw the robber's face during the robbery. In addition, a third witness, Wendell Gary, testified that he had seen the defendant at the store on the day of the robbery. The case was further strengthened by Gary's testimony that the defendant was a former assistant manager of the store who knew that money was kept in the filing cabinet in the back office, and Chesmar's testimony that the robber demanded to go to the back room and, once there, pointed to the filing cabinet while demanding the rest of the money.

Although the improper comments were uninvited and were related to a critical issue in the case, namely, the credibility of the witnesses' identification of the defendant, the comments were not central to that issue. In addition, the misconduct was not particularly severe and was limited to two brief statements during rebuttal argument. The court in its charge specifically instructed the jury that statements and arguments of counsel are not evidence. In light of all of those factors, we are not persuaded that the prosecutor's improper remarks deprived the defendant of a fair trial.

## III

The defendant's final claim is that the court improperly denied his motion to suppress Cole's in-court identification of him. Specifically, the defendant argues that Cole's identification violated the defendant's right to due process because Cole previously had attended the defendant's arraignment at the suggestion of the state office of the victim advocate.[5]

The following additional facts underlie the defendant's claim. Prior to trial, the defendant filed a motion to suppress Cole's in-court identification of the defendant. At the suppression hearing, Cole testified to the

---

[5] The defendant also claims that the court should have suppressed Chesmar's in-court identification of him because it was tainted by earlier out-of-court identification procedures. Specifically, he claims that after Chesmar selected the defendant's photograph from an array presented to her by the police, she asked whether she had picked the person who was a former employee of the Family Dollar store, and the police answered in the affirmative.

In his brief, the defendant merely states the facts and procedural background underlying the issue, but fails to provide any legal analysis. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Internal quotation marks omitted.) *State* v. *Van Eck*, 69 Conn. App. 482, 493, 795 A.2d 582, cert. denied, 260 Conn. 937, 802 A.2d 92, cert. denied, 261 Conn. 915, 806 A.2d 1057 (2002).

following facts. At some time subsequent to the defendant's arrest, the office of the victim advocate informed Cole that the defendant was scheduled for arraignment at the courthouse in Meriden. Cole stated that he decided to attend the arraignment because he "just wanted to see what was . . . going on with the case." When the prosecutor asked Cole whether his intention in attending the arraignment was "to identify anybody," Cole answered in the negative. The defendant's name was announced as he was brought into the courtroom for arraignment. Cole was able to view the back of the defendant's head and "kind of a profile of his face." On the basis of his view of the defendant at the arraignment, Cole concluded that the defendant could have been the man who committed the robbery on December 12, 1999.

In ruling on the motion to suppress, the court found that Cole's ability to identify the defendant at trial would be based on his recollection of the robbery, rather than anything he might have seen at the defendant's arraignment. The court also concluded that the action of the office of the victim advocate, in informing Cole of the defendant's arraignment, did not constitute state action implicating the defendant's right to due process. Accordingly, the court denied the defendant's motion to suppress Cole's in-court identification.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . When a factual issue implicates a constitutional claim, however, we review the record carefully to ensure that its determination was supported by substantial evidence. . . .

Nonetheless, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooper*, 65 Conn. App. 551, 563–64, 783 A.2d 100, cert. denied, 258 Conn. 940, 786 A.2d 427 (2001).

"A defendant who challenges a ruling on a motion to suppress identification evidence must prove that (1) the identification procedures were unnecessarily suggestive, and (2) if found to have been so, the resulting identification was not reliable in the totality of the circumstances." *State* v. *Edwards*, 201 Conn. 125, 146, 513 A.2d 669 (1986). "The reliability of an identification procedure is considered under various factors, such as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of [the witness'] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." (Internal quotation marks omitted.) *State* v. *Colon*, 70 Conn. App. 707, 722, 799 A.2d 317, cert. denied, 261 Conn. 933, 806 A.2d 1067 (2002). The defendant must also show that the identification was arranged by the state and did not occur spontaneously. *State* v. *Jones*, 59 Conn. App. 762, 766, 757 A.2d 689 (2000), cert. denied, 255 Conn. 924, 767 A.2d 99 (2001).

The defendant argues that the court improperly denied his motion to suppress because Cole's viewing of the defendant at the arraignment was arranged by state action. Specifically, the defendant argues that because the office of the victim advocate, a state agency, informed Cole of the arraignment, his subsequent attendance at that proceeding was an identification compelled by state action. The defendant further

argues that the court should have concluded that Cole's viewing of the defendant at the arraignment was an unnecessarily suggestive identification procedure.

We note that the court denied the defendant's motion to suppress without preparing a written memorandum of decision or filing a signed transcript of its oral decision, as required by Practice Book § 64-1 (a). The defendant did not avail himself of the procedures set forth in Practice Book § 64-1 (b) to compel compliance with that requirement. "It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . [Nevertheless, we] have, on occasion, reviewed claims of error in light of an unsigned transcript as long as the transcript contains a sufficiently detailed and concise statement of the trial court's findings." (Internal quotation marks omitted.) *Santa Maria* v. *Klevecz*, 70 Conn. App. 10, 11–12, 800 A.2d 1186 (2002).

The transcript in the present case does not contain a sufficiently detailed statement of the court's findings. Specifically, the court did not make any findings whatsoever regarding the suggestiveness of the arraignment proceedings. Furthermore, with regard to the reliability of the in-court identification, the court's only express finding was that the identification was based on Cole's observations on the day of the robbery, rather than anything that took place at the arraignment. The court did not indicate what factors it weighed in making the reliability determination. The defendant did not request an articulation of the court's findings or reasoning on those issues. See *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, supra, 254 Conn. 393–94. Consequently, even if we were to agree with the defendant's argument that the action of the office of the victim advocate in notifying a crime victim of a defendant's arraignment constitutes the type of state action necessary for a successful challenge to

the reliability of an in-court identification, the record would be inadequate to review the court's determination regarding the suggestiveness of the arraignment proceedings and the reliability of the in-court identification. We therefore decline to review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.