WILLIE YOUNG *v.* COMMISSIONER OF CORRECTION
(AC 30038)

Bishop, DiPentima and Tyma, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

360

Argued January 4—officially released April 13, 2010

*Anthony E. Parent*, special public defender, for the appellant (petitioner).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, former senior assistant state's attorney, for the appellee (respondent).

### Opinion

BISHOP, J. The petitioner, Willie Young, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly found that (1) his trial counsel was not ineffective in failing to reassert a *Batson*[1] claim during jury selection and (2) his appellate counsel was not ineffective in failing to file a motion for articulation of the trial court's reasoning in denying a motion to suppress.[2] We affirm the judgment of the habeas court.

---

[1] *Batson* v. *Kentucky*, 476 U.S. 79, 96–98, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[2] In the alternative, the petitioner asks this court to exercise its supervisory powers to correct a substantial injustice by reviewing his claim that the trial court improperly denied his motion to suppress two eyewitness identifications of him. "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . [O]ur supervisory authority [however] is not a form of free-floating justice, untethered to legal principle. . . . [O]ur supervisory powers are invoked only in the rare circumstance

A recitation of the underlying facts was set forth in this court's opinion in *State* v. *Young*, 76 Conn. App. 392, 819 A.2d 884, cert. denied, 264 Conn. 912, 826 A.2d 1157 (2003), in which we affirmed the trial court's judgment of conviction. There, we determined that the jury reasonably could have found the following facts: "At approximately 5:20 p.m. on December 12, 1999, two employees at the Family Dollar store in Hamden, Laura Chesmar and George Cole, were approached by the [petitioner] as they were counting cash at the registers. The [petitioner] ordered Chesmar and Cole to sit on the floor while he took cash from the registers. He then ordered them to accompany him to the back of the store, where he forced Cole at gunpoint to unlock the door to the store's back office. Once inside the office, the [petitioner] forced Cole to retrieve approximately $8000 from a money box kept in a filing cabinet. He then bound Chesmar and Cole using electrical cords. They subsequently freed themselves and escaped to a nearby restaurant, where they telephoned the police." Id., 394–95.

Following a jury trial, the petitioner was convicted of one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 and one count of larceny in the second degree in violation of General Statutes § 53a-123. On December 8, 2000, the trial court, *Thompson, J.*, imposed an effective sentence of seventeen years incarceration followed by eight years of special parole. The petitioner filed a direct appeal, and his conviction was affirmed by this court. See id., 394. The petitioner subsequently filed a petition for a writ of habeas corpus, and

where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Elson*, 116 Conn. App. 196, 247, 975 A.2d 678 (2009). In this collateral proceeding, and under the circumstances of this case, the exercise of our supervisory powers is not warranted.

on September 12, 2005, an amended petition alleging ineffective assistance of his trial counsel, attorney Beth A. Merkin, and his appellate counsel, attorney Mary Anne Royle. After a hearing, the habeas court, *Schuman, J.*, denied relief in a detailed memorandum of decision. The court subsequently granted a petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

## I

The petitioner first claims on appeal that the habeas court improperly denied his claim that his trial counsel provided ineffective assistance to him on the ground that counsel failed to reassert, during jury selection, a claim under *Batson*,[3] thus, making it probable that he could not prevail on appeal. We disagree.

The following additional factual and procedural history is relevant to the petitioner's claim. This court, in *State* v. *Young*, supra, 76 Conn. App. 392, stated that "[d]uring jury selection, the prosecutor questioned L,[4] a black male venireperson. In response to the prosecutor's questions, L stated that someone had once broken into his home and stolen some items. L also indicated that many of his acquaintances had been victims of crimes, including armed robbery, and that he had a good friend who was a convicted murderer. When the prosecutor asked L whether he would have any trouble making a decision as a juror in light of his familiarity

---

[3] In *Batson*, the United Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that [members of one race] as a group will be unable impartially to consider the State's case against [a defendant of the same race]." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 37 Conn. App. 589, 596, 658 A.2d 98, cert. denied, 234 Conn. 916, 661 A.2d 97 (1995), quoting *Batson* v. *Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). ·

[4] We refer to venirepersons by initial to protect their legitimate privacy interests. See, e.g., *State* v. *Wright*, 86 Conn. App. 86, 88 n.3, 860 A.2d 278 (2004).

with people on both sides of the law, L answered in the negative. In elaborating on his answer, however, L stated that 'God is the final judge, so it's nothing on me.' " Id., 395. Prior to the lunch recess, the state asked L, "you sound like you're the kind of person that if you really believe strongly in something and you didn't agree with what you were being told that you stick to your guns, it sounds like?" L responded: "Pretty much, but the Bible says we still must live by the laws of the land in spite." After the lunch recess, L returned with a prepared statement in an attempt to clarify his position: "[B]asically, it's this; this is where I stand. Okay. All right. Christ is the word, okay, the word of God. And Christ is my Lord. So, I have to have compassion and sympathy for him, just like I have to have compassion and sympathy on all you guys in this courtroom. It doesn't make any difference because he's on trial. He's a sinner just like all of us in this room. So, I have to have that compassion and sympathy for him, but Christ is also the truth. So, that means that if I see that he is guilty I cannot deny it, I cannot lie. I have to speak on it, but, in that case, if he is guilty and I see that he's guilty, then, you know, all I can do is pray for him because God is his judge. And if I see that he's innocent and the judge and the jury say that he's guilty, then all I can do is pray for the judge and the jury because God is their judge. So, that's where I'm standing." In response to follow-up questions from defense counsel, L repeatedly said that he thought he could put his personal beliefs aside and consider the case based on the court's instructions.

The state chose to exercise a peremptory challenge to excuse L from jury service. Attorney Merkin objected pursuant to *Batson* and requested that the state give a race neutral reason for exercising a peremptory challenge.[5] In response, the state explained that L had given

[5] "Under Connecticut law, [o]nce a [party] asserts a *Batson* claim, the [opposing party] must advance a neutral explanation for the venireperson's

contradictory answers to questions about whether "he could follow instructions from the court that he felt, in his heart, he could not agree with." The state claimed that the fact that L had felt the need to return from the lunch recess with a prepared statement spelling out his opinion was evidence that L's earlier statements had been contradictory. The state also reasoned that L had had substantial contact with people who had been victims of crimes, as well as people who were incarcerated. The state went on to note that "[o]ne of [the people with whom he is associated] is a person who he is, I guess, intent on corresponding with, who's a convicted murderer. So, that, I think, it puts him in a kind of different status than a juror the state would typically want."

The court then asked Merkin, "[d]o you claim those [reasons] are pretextual?" Merkin argued instead that there was no merit to the state's concern about L having contact with victims of crimes and an ongoing correspondence with a convicted murderer because many African-American males in New Haven have such contacts and that if that were a legitimate reason to excuse a venireperson, then the court would never have any young African-American males from New Haven serving on juries. Counsel also disagreed with the state that L had given contradictory answers as to whether he would be able to follow the court's instructions. The court, again, asked, "[s]o, you're claiming that those

removal. . . . The [party asserting the *Batson* claim] is then afforded the opportunity to demonstrate that the [opposing party's] articulated reasons are insufficient or pretextual. . . . [T]he trial court then [has] the duty to determine if the [party asserting the *Batson* claim] has established purposeful discrimination. . . . The [party asserting the *Batson* claim] carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was tainted by purposeful discrimination." (Internal quotation marks omitted.) *State* v. *Collazo*, 115 Conn. App. 752, 762, 974 A.2d 729 (2009), cert. denied, 294 Conn. 929, 986 A.2d 1057 (2010).

reasons are pretextual? Isn't that the standard? Whether there is a systematic [exclusion] and that the reason given is, rather than being race neutral, is pretextual?" Merkin responded in the affirmative. After the state responded, largely reiterating its previously stated reasons for the peremptory challenge, the court concluded: "Well, on this record, I'm not prepared to make a finding that the reasons given are pretextual."

Later that afternoon, a Caucasian venireperson, E, was questioned by Merkin and then by the state.[6] At one point, E stated that he knew some individuals who had been arrested, but none of the arrests had been for serious crimes. He also stated that he probably had a family member who had been arrested. Merkin accepted E to be a juror, as did the state.

On direct appeal, the petitioner claimed that the court improperly had failed to find discrimination by the state, due to the prosecutor's disparate treatment of L and E, who the petitioner alleged possessed similar characteristics. This court explained that it would be unfair to require the trial court to conduct a comparative evaluation of the two venirepersons when they were not identified by the petitioner in support of his *Batson* claim and concluded that the petitioner's "failure to inform the trial court of the full factual basis for the claim render[ed] [the] claim unreviewable." (Internal quotation marks omitted.) *State* v. *Young*, supra, 76 Conn. App. 399. Before the habeas court, the petitioner claimed that his trial counsel had been ineffective on the ground that no attorney of reasonable competence would have failed to preserve another claim of disparate treatment after E was accepted as a juror or would have failed to reargue the first *Batson* claim regarding

---

[6] The record does not reflect clearly that E was Caucasian. However, because the parties have treated E as such throughout the petitioner's direct appeal and the habeas trial, we will proceed on that assumption.

L in light of the allegedly similar characteristics between L and E.[7] The petitioner argued that because Merkin failed to take any of these actions, the record was insufficient, and, as a consequence, this court refused to review the petitioner's claim on appeal. Thus, the petitioner concludes that Merkin's failure to renew a *Batson* claim regarding the exclusion of L from the jury after E had been accepted likely doomed what probably would have been a successful issue on appeal.

The habeas court denied relief, finding that "Merkin acted reasonably in not renewing the *Batson* challenge [after E had been accepted] because a comparison of the voir dire responses of the two venirepersons in question [did] not raise an inference of discrimination." The court found, further, that "there was no basis to infer that the prosecutor's decision to accept E was a product of bias in favor of white jurors or discrimination against African-American jurors . . . [and] the [p]etitioner, therefore [had] not overcome the presumption that trial counsel 'made all significant decisions in the exercise of reasonable professional judgment.' "

Initially, we set forth the applicable standard of review. "In a habeas appeal, although this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Francis D.* v. *Commissioner of Correction*, 118 Conn. App. 350, 352, 983 A.2d 70 (2009),

---

[7] The petitioner also argued before the habeas court that Merkin was ineffective in that she failed to raise a dual motivation claim where the state proffered two purportedly race neutral reasons for its peremptory challenge as to L and then accepted E as a juror. The habeas court disposed of that claim in a footnote in which it concluded that there was no factual foundation for a claim of that nature. On appeal, the petitioner does not challenge that portion of the court's decision.

cert. denied, 294 Conn. 930, 986 A.2d 1056 (2010). "Whether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by [an appellate] court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *McCown* v. *Commissioner of Correction*, 113 Conn. App. 117, 119, 966 A.2d 271, cert. denied, 292 Conn. 902, 971 A.2d 689 (2009).

"To determine whether the petitioner has demonstrated that counsel's performance was ineffective, we apply the two part test established in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." (Internal quotation marks omitted.) *McCown* v. *Commissioner of Correction*, supra, 113 Conn. App. 119. According to *Strickland*, "[a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, 118 Conn. App. 565, 568, 984 A.2d 793 (2009). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance;
that is, the defendant must overcome the presumption
that, under the circumstances, the challenged action
might be considered sound trial strategy." (Internal quo-
tation marks omitted.) *Davey B.* v. *Commissioner of
Correction,* 114 Conn. App. 871, 876, 971 A.2d 735
(2009).

In analyzing the first prong of the *Strickland* test, we
conclude that the record does not reveal anything to
contradict the habeas court's conclusion that Merkin's
representation of the petitioner was reasonably compe-
tent. The petitioner grounds his claim of ineffective
assistance of counsel on the premise that "[d]espite the
similarities" between the two venirepersons, L and E
received disparate treatment and that any competent
attorney would have recognized this and responded.
We disagree.

The voir dire examinations at issue revealed very
little similarity between L and E. They worked in differ-
ent fields of employment. L was involved in social work
for an organization that helped mentally disabled adults
get jobs and learn to function in society with relative
independence, and he previously had worked with an
organization through which he taught inner city youths
to become leaders. E was a stone mason who ran a
small business with his father and described himself as
not being a "very big emotional person . . . ." He men-
tioned that his wife always tells him that he has no
emotion. These differences, while not necessarily indic-
ative of the relative ability of either venireperson to
serve as a juror, were part of the picture available to
counsel as they were deciding whether to accept either
potential juror, to exercise peremptory challenges and,
specifically, whether defense counsel should have reit-
erated a *Batson* claim after E had been accepted by
both parties.

Notwithstanding differences between L and E, the petitioner, nevertheless, asserts that L and E were similarly situated on the ground that they each testified to knowing people who had been arrested, which was significant because the state had justified its exercise of a peremptory challenge as to L, in part, on the ground that he had a friend who was incarcerated. The seriousness of the offenses in question, however, were not similar. E stated that he had friends who had been arrested but that none of the arrests had been for a serious crime. E also stated, when asked if he had any family members that had been arrested, "I'm sure I have. I have twenty-four [aunts and uncles], so I got lots of relatives." Despite the petitioner's characterization of this response as an affirmative statement that he had family members who had been arrested, that claim is no more than supposition. Conversely, L attested to having a good friend who was incarcerated for murder and expressed a desire to renew communication with him.

Additionally, the state expressed a concern that L's religious devotion could prevent him from following the law as dictated by the court. Wearing a T-shirt that bore verses of scripture, L made statements regarding God as the judge and hesitated before responding to certain questions pertaining to his willingness to set aside his beliefs and accept instructions from the court. E did not make any comments that could reasonably be interpreted as raising concerns of this nature.

In sum, the record amply supports the conclusion of the habeas court that there would have been no reason that, after hearing the voir dire of E, a reasonably competent attorney should have found it necessary, or appropriate, to renew a *Batson* challenge regarding L. Thus, the habeas court correctly determined that the petitioner failed to show that Merkin had acted in a manner outside of the "range of competence displayed

by lawyers with ordinary training and skill in the criminal law"; (internal quotation marks omitted) *Turner* v. *Commissioner of Correction*, supra, 118 Conn. App. 568; and, thus, had not satisfied the performance prong under *Strickland*. Because *Strickland* requires that the petitioner satisfy both prongs of the test for ineffective assistance of counsel; see id.; we need not address the issue of prejudice and conclude that the petitioner has failed to show that he received ineffective assistance of trial counsel. See *Mitchell* v. *Commissioner of Correction*, 109 Conn. App. 758, 765, 953 A.2d 685, cert. denied, 289 Conn. 950, 961 A.2d 417 (2008).

II

The petitioner next claims that the habeas court improperly concluded that he received effective assistance of appellate counsel. Specifically, the petitioner alleges that because Royle failed to file a motion for articulation and to ensure that there was an adequate record before the Appellate Court regarding his motion to suppress, this court declined to review his claim that the trial court improperly declined to suppress the in-court identification of him by Cole. The petitioner claims, thus, that he was unsuccessful in what would, otherwise, have been a successful appeal.

The following additional factual and procedural history is relevant to the petitioner's claim. Prior to trial, the petitioner filed a motion to suppress the in-court identification of him by Cole.[8] At the suppression hearing, Cole testified that at some point after the petition-

_____

[8] The petitioner's motion to suppress also attempted to exclude the identification of the petitioner by Chesmar on the ground that it was unnecessarily suggestive. The claim of suggestiveness was that after Chesmar picked the petitioner's photograph out of an array provided by the police, she asked the police whether she had picked the person who was a former employee of the Family Dollar store, and the police informed her that she had. See *State* v. *Young*, supra, 76 Conn. App. 406 n.5. Additionally, the petitioner claimed the identification was suggestive because Chesmar had expected the perpetrator to be included in the photographic array. The motion was denied, and the petitioner claimed on direct appeal that this was improper.

er's arrest, the office of the victim advocate informed him that the petitioner was scheduled to be arraigned at the courthouse in Meriden. He stated that he decided to go to the courthouse to attend the arraignment because he "just wanted to see what was . . . going on with the case." (Internal quotation marks omitted.) *State* v. *Young*, supra, 76 Conn. App. 407. The prosecutor asked Cole whether his intention in going to the arraignment was to identify anybody, to which Cole responded in the negative. Id. Cole testified that the petitioner's name was read as he was brought into the courtroom, and Cole could see the back of the petitioner's head and a profile of his face. On the basis of this view, Cole determined that the petitioner could have been the man who committed the robbery. Id. Merkin asked Cole whether this viewing of the petitioner at the arraignment affected his present ability to identify the petitioner, to which he responded: "No. Because, you know, the picture I have of him in my mind is when he popped up with the gun at the time [of the robbery]. That's the picture I have in my mind." The court denied the motion to suppress, concluding that Cole's identification of the petitioner at trial would be based on his recollection of the robbery and not on what he had seen at the arraignment. *State* v. *Young*, supra, 407. Cole later testified at trial and identified the petitioner as the perpetrator of the robbery.

On direct appeal, the petitioner alleged that the court improperly denied his motion to suppress the in-court

On appeal, however, this court did not review the claim on the ground that it was briefed inadequately. Id. The petitioner later claimed before the habeas court that Royle's failure to brief this issue adequately amounted to ineffective assistance of his appellate counsel. The court found that Royle did inadequately brief the issue but that the petitioner had failed to prove prejudice. The court found that because the allegedly suggestive remark by the police occurred after Chesmar had made the identification of the petitioner, it could not have influenced her identification, and, thus, the petitioner could not show that he would have been successful but for Royle's failure to brief the issue properly. The petitioner does not challenge the court's ruling as it pertains to Chesmar's identification.

identification of him by Cole. The petitioner alleged that the in-court identification violated his right to due process because Cole had attended the petitioner's arraignment at the suggestion of the office of the victim advocate, which he alleged constituted an identification compelled by state action. Id., 408. Additionally, the petitioner alleged that Cole's viewing of the petitioner at the arraignment constituted an unnecessarily suggestive identification procedure. Id., 409. In the direct appeal, this court reached the following conclusion: "[t]he transcript in the present case does not contain a sufficiently detailed statement of the [trial] court's findings. Specifically, the court did not make any findings whatsoever regarding the suggestiveness of the arraignment proceedings. Furthermore, with regard to the reliability of the in-court identification, the court's only express finding was that the identification was based on Cole's observations on the day of the robbery, rather than anything that took place at the arraignment. The court did not indicate what factors it weighed in making the reliability determination.[9] The [petitioner] did not request an articulation of the court's findings or reasoning on those issues. . . . Consequently, even if we were to agree with the [petitioner's] argument that the action of the office of the victim advocate in

[9] In order to prevail on a claim challenging an eyewitness identification the claimant must satisfy a two-pronged test: "first, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances." (Internal quotation marks omitted.) *State* v. *Randolph*, 284 Conn. 328, 384, 933 A.2d 1158 (2007). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers*, 409 U.S. 188, 199–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). Our Supreme Court declined to abandon the *Neil* factors in *State* v. *Ledbetter*, 275 Conn. 534, 557, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

notifying a crime victim of a defendant's arraignment constitutes the type of state action necessary for a successful challenge to the reliability of an in-court identification, the record would be inadequate to review the court's determination regarding the suggestiveness of the arraignment proceedings and the reliability of the in-court identification. We therefore decline to review the [petitioner's] claim." (Citation omitted.) Id., 409–10.

At the habeas hearing, the petitioner claimed that he had received ineffective assistance of appellate counsel because, inter alia, Royle had failed to file a motion for articulation of the trial court's reasons for denying the motion to suppress Cole's in-court identification of the petitioner. The court rejected the petitioner's claim on the ground that Royle "could not reasonably have anticipated that the Appellate Court would require articulation in this situation." The habeas court went on to explain that "[t]his case is not one in which the trial court did not decide the issue raised on appeal. On the contrary, as acknowledged by the Appellate Court, the trial court did decide the issue of whether the identification of the petitioner at the arraignment played any improper role in the subsequent in-court identification of the petitioner by Cole." The habeas court also concluded that the trial court's ruling appeared to have addressed the necessary issues and that it did so with reasonable clarity. The habeas court noted that because the state did not argue on appeal that the trial court's ruling was not sufficiently clear, Royle would not have been alerted to a need for a motion for articulation in that regard. The court also cited recent decisional law in which this court did not find it necessary to have detailed findings from the trial court in order to review denials of motions to suppress, and, also, opinions in which this court reviewed the denial of a motion in which the trial court had not articulated its reasoning. See State v. Harris, 85 Conn. App. 637, 651, 858 A.2d 284, cert. denied, 272 Conn. 901, 863 A.2d 695 (2004);

*State* v. *Colon*, 70 Conn. App. 707, 722, 799 A.2d 317, cert. denied, 261 Conn. 933, 806 A.2d 1067 (2002); *State* v. *Sanchez*, 69 Conn. App. 576, 579–83, 795 A.2d 597 (2002). Thus, the habeas court concluded that "there was no deficiency in Royle's failure to anticipate the need for a motion for articulation."

Additionally, the habeas court, quoting *Small* v. *Commissioner of Correction*, 286 Conn. 707, 720, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008), found that the petitioner did not demonstrate that a reasonable probability existed that " 'but for, his counsel's [error], he would have prevailed on his appeal.' " The court explained that it would be purely speculative to conclude that the trial court would say anything in an articulation that would undermine its previous determinations that Cole's in-court identification was independent of his attendance at the Meriden arraignment and that the action by the office of the victim advocate did not constitute state action.

Initially, we set forth the relevant standard of review. As noted previously, "our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Francis D.* v. *Commissioner of Correction*, supra, 118 Conn. App. 352. To succeed on a claim of ineffective assistance of appellate counsel, the petitioner must meet both prongs of the *Strickland* test, performance and prejudice. *Turner* v. *Commissioner of Correction*, supra, 118 Conn. App. 568. Additionally, when a petitioner is claiming ineffective assistance of counsel, the prejudice prong is satisfied if it is demonstrated that "there is a reasonable probability that but for appellate counsel's error, the petitioner would have prevailed in his direct appeal." *Charles* v. *Commis-*

*sioner of Correction,* 112 Conn. App. 349, 353, 962 A.2d 868, cert. denied, 290 Conn. 922, 966 A.2d 235 (2009).

The petitioner's claim readily may be disposed of by reference to the prejudice prong. The petitioner has failed to meet his burden of proving that but for Royle's allegedly improper conduct he would have been successful in his direct appeal. Because both prongs of the test for ineffective assistance of counsel must be met for a petitioner to succeed, and because we conclude that the petitioner has failed to establish the prejudice prong of the test, we need not analyze whether Royle's conduct amounted to ineffective performance. See *Weinberg* v. *Commissioner of Correction,* 112 Conn. App. 100, 107, 962 A.2d 155, cert. denied, 291 Conn. 904, 967 A.2d 1221 (2009).

Whether or not Royle should have filed a motion for articulation with the trial court in order to provide a record of the court's reasons for denying the motion to suppress Cole's in-court identification, the petitioner did not show, at the habeas proceeding, that, but for Royle's failure to request an articulation, he would have prevailed on appeal.

In support of his claim on appeal, the petitioner highlights statements from this court's opinion from his direct appeal in which we noted that the trial court, in ruling on the motion to suppress, did not make any findings regarding the suggestiveness of the arraignment proceedings and did not explain which factors it considered in making the determination that the in-court identification was reliable. Even if the trial court had articulated those reasons, however, one can only speculate as to how such an exposition would have beneficially affected the petitioner's chances of success on appeal.

As noted, the trial court specifically found that Cole's ability to give an in-court identification was based on

information independent of the arraignment. Thus, even if the trial court made a finding that the arraignment proceedings were suggestive, that does not lead to the conclusion that Cole's attendance at the proceedings in any way affected his ability to identify the petitioner at trial. In sum, there is no basis for concluding that an articulation by the trial court would have had any effect on the outcome of the petitioner's appeal.

The habeas court found, and we agree, that the trial court's factual determination that Cole's identification of the petitioner was independent of the arraignment proceeding, was well supported by the testimony from the hearing on the motion to suppress. Because the petitioner failed, at the habeas hearing, to demonstrate that he would have been successful on appeal had Royle obtained an articulation from the trial court, he failed to prove that he was deprived of the effective assistance of appellate counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

_____

* The listing of judges reflects their seniority status on this court as of the date of oral argument.