JAMES G.[1] *v.* COMMISSIONER OF CORRECTION
(AC 29407)

Lavine, Alvord and West, Js.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued November 10, 2009—officially released May 4, 2010

*Alinor C. Sterling*, special public defender, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Michael Dearington*, state's attorney, and, on the brief, *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

WEST, J. The petitioner, James G., appeals from the denial of his petition for a writ of habeas corpus. The court granted the petition for certification to appeal. On appeal, the petitioner claims that the habeas court improperly found that his trial counsel provided effective assistance. Specifically, he claims that the court incorrectly concluded that he had failed to establish that he was prejudiced by his trial counsel's failure to call witnesses to account for the petitioner's whereabouts during the time period that the assaults resulting

in his conviction occurred. We affirm the judgment of the habeas court.

In *State* v. *James G.*, 268 Conn. 382, 844 A.2d 810 (2004), the petitioner's direct appeal to our Supreme Court, the facts underlying his criminal conviction were summarized as follows: "In November, 1999, the [petitioner's] biological daughter, T, lodged a criminal complaint against the [petitioner] alleging that he had sexually molested her between April, 1993, and January, 1994, when she was seven years old. The complaint arose after T informed her mother, through a letter written in November, 1999, that the [petitioner] had sexually abused her. At the time of the petitioner's January, 2001 trial, T was fifteen years old.

"The [petitioner's] sexual abuse of T began in April, 1993, during an incident in which the [petitioner] entered the bathroom just after T had taken a bath. Although the [petitioner] did not reside with T and T's mother at this time, he slept at their house approximately four nights per week. The [petitioner] took T's towel and proceeded to dry her off and digitally penetrate her vagina for approximately five minutes.

"Thereafter, the [petitioner] began entering T's room at approximately midnight several times per week. The [petitioner] would cover T's head with a blanket and either digitally or orally penetrate her vagina. The [petitioner] also would kiss T's cheek and neck. He remained clothed during these incidents except for one time when he did not wear pants.

"The [petitioner] threatened T, stating that he would harm T's mother and K [T's older half sister] if T told anyone about the abuse. During the course of the abuse, from April, 1993, to January, 1994, T did not inform anyone about the petitioner's actions." Id., 386–87.

A jury found the petitioner guilty of sexual assault in the first degree in violation of General Statutes (Rev.

to 1993) § 53a-70 (a) (2), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2) and risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2). The court rendered judgment in accordance with the jury verdict and sentenced the petitioner to twenty-three years imprisonment. *State* v. *James G.*, supra, 268 Conn. 385–86. His direct appeal followed. Id. Our Supreme Court affirmed the judgment of conviction. Id., 424.

The petitioner then brought the habeas action underlying this appeal. In his amended petition, filed May 30, 2006, he claimed, inter alia,[2] that his trial counsel, attorney Gerald Giaimo, was ineffective for failing to call witnesses at trial to account for the petitioner's whereabouts during the time period that the assaults occurred. The habeas trial was held on May 21, 2007. The court, by memorandum of decision filed November 6, 2007, denied the petition for a writ of habeas corpus, concluding that the petitioner had failed to establish that he was in any way prejudiced by Giaimo's performance.[3] On November 14, 2007, the court certified the appeal to this court. Further facts will be set forth as necessary.

Preliminarily, we set forth the standard of review we employ when a petitioner claims ineffective assistance of trial counsel. "A claim of ineffective assistance of counsel consists of two components: a performance

---

[2] In his amended petition, the petitioner also alleged that Giaimo provided ineffective assistance by "failing to formulate and execute an effective . . . strategy at trial by introducing evidence of third party culpability." The petitioner, however, withdrew that count prior to the commencement of his habeas trial.

[3] On June 9, 2008, after receiving an extension of time to file a motion for articulation, the petitioner filed such a motion. In that motion, the petitioner sought, essentially, to have the court articulate whether Giaimo's performance was deficient. That motion was denied. This court later granted a motion for review of the denial of his motion for articulation but denied the relief requested therein.

prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if *both prongs* are satisfied." (Citation omitted; emphasis added; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 77, 967 A.2d 41 (2009). Moreover, "[a] reviewing court can find against a petitioner on either ground, whichever is easier." (Internal quotation marks omitted.) *Leatherwood* v. *Commissioner of Correction*, 105 Conn. App. 644, 647, 938 A.2d 1285, cert. denied, 286 Conn. 908, 944 A.2d 979 (2008). "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Joseph* v. *Commissioner of Correction*, 117 Conn. App. 431, 433, 979 A.2d 568, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009).

The petitioner claims that Giaimo failed to investigate his case adequately. Specifically, he asserts that Giaimo failed to investigate an alibi defense reasonably by locating a number of witnesses who, the petitioner claims, could have accounted for his whereabouts during the time that the victim was sexually assaulted and thereby could have undermined the credibility of key prosecution witnesses, including the victim. Those individuals,

Leanne Dahlmeyer, Robert L. Rogers, Jr., David Isola and Ester Kopylec-Isola, along with Giaimo, testified at the habeas trial.

In its memorandum of decision, the court found Giaimo to be credible and made the following findings of fact on the basis of his testimony. Soon after he began representing the petitioner in June, 2000, Giaimo became aware that the state had filed a request for a notice of alibi defense. Giaimo knew that the crimes were alleged to have occurred on nights when the petitioner was sleeping at the victim's home as a guest of the victim's mother. Giaimo spoke to the petitioner on several occasions in preparation for the trial.[4] During those conversations, the petitioner disclosed individuals whom Giaimo later called as witnesses during the trial, including Robin DeNicola and Norman DeNicola, who were friends of the victim's mother, as well as Tara Mallon, a girlfriend of the petitioner. Giaimo testified that the petitioner never mentioned Dahlmeyer before the trial and that he did not recognize the names of Isola and Kopylec-Isola.[5] Giaimo further testified that he was certain that he discussed with the petitioner the witnesses who would testify on his behalf and that the petitioner did not tell Giaimo that potential witnesses were absent.

After carefully reviewing the record and briefs, we agree with the habeas court's decision that the petitioner was not deprived of the effective assistance of trial counsel, in any respect. The petitioner failed to show any prejudice resulting from Giaimo's performance. The crimes took place over an extended period

---

[4] We note that the petitioner was not incarcerated during the pendency of his trial.

[5] The petitioner testified at the habeas trial that he had told Giaimo about Dahlmeyer, Rogers, Isola and Kopylec-Isola and that they could provide testimony concerning his whereabouts at the times the assaults took place. The court found the petitioner's testimony at the habeas trial to be lacking in credibility.

of time and on multiple occasions. Any effective alibi defense would have had to have persuaded the jury that the petitioner was absent from the victim's home for effectively the entire period during which the crimes were alleged to have happened. Our review of the testimony at the habeas trial of Dahlmeyer, Rogers, Isola and Kopylec-Isola[6] reveals clearly that it failed to establish an alibi for the petitioner. Moreover, we also conclude that that testimony failed to undermine the credibility of any prosecution witness such that, but for its absence at trial, there was a reasonable probability that the result of the petitioner's criminal trial would have been different. See *Strickland* v. *Washington* 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (defining reasonable probability as "a probability sufficient to undermine confidence in the outcome").

---

[6] The court summarized the testimony of the petitioner's witnesses as follows: "Dahlmeyer testified [that] she began dating the petitioner in August, 1993. She testified that she stayed at the petitioner's house several nights per week starting [in] late August or early September. Her testimony did not account for every night that the victim alleged she was sexually assaulted by the petitioner. According to Dahlmeyer, she and the petitioner broke off their relationship approximately three months after it began when the petitioner began dating Mary Sauce by Thanksgiving of 1993. Dahlmeyer testified that Kopylec-Isola began renting a room from the petitioner after the petitioner stopped dating Dahlmeyer. . . .

"Robert 'Rusty' Rogers testified that the petitioner did not work for him in 1993. His version of the events [concerning the construction project at which the petitioner also worked] was different from that of the petitioner and . . . Isola. Rogers testified that the road work on [that] project was almost completed by 1991. In 1993, he recalled seeing the petitioner working at a house across the street from the house Rogers was building. He testified that he had not seen the petitioner for a couple of years. Rogers did not corroborate [the] petitioner's and . . . Isola's accounts of [the] petitioner's work history in 1993. . . .

"Isola has been a friend of the petitioner for over thirty years. Isola testified regarding the beginning [of] work on [that construction] project . . . . Isola consistently was confused about dates at issue and even was confused as to when he married his wife.

"[Kopylec-Isola] testified that she met the petitioner in the spring of 1994 and began renting from the petitioner in March, 1994. Therefore, she could not assist the petitioner with his alibi."

Because both prongs[7] of *Strickland* must be established for the petitioner to prevail, we need not determine the deficiency of Giaimo's performance because consideration of the prejudice prong is dispositive of the petitioner's ineffectiveness claim. See *Crocker* v. *Commissioner of Correction*, 101 Conn. App. 133, 143, 921 A.2d 128, cert. denied, 283 Conn. 905, 927 A.2d 916 (2007).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] "To determine whether the petitioner has demonstrated that counsel's performance was ineffective, we apply the two part test established in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). . . . According to *Strickland*, [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Citation omitted; internal quotation marks omitted.) *Young* v. *Commissioner of Correction*, 120 Conn. App. 359, 367, 991 A.2d 685, cert. denied, 297 Conn. 905, 995 A.2d 635 (2010)

