******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LEONARD R. TALTON *v.* COMMISSIONER
OF CORRECTION
(AC 36039)

Lavine, Alvord and Bishop, Js.

*Argued November 20, 2014—officially released January 27, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*Albert J. Oneto IV*, assigned counsel, for the appel-
lant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant
state's attorney, with whom, on the brief, were *Michael
Dearington*, state's attorney, and *Adrienne Maciulew-
ski*, deputy assistant state's attorney, for the appellee
(respondent).

*Opinion*

ALVORD, J. The petitioner, Leonard R. Talton, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second petition for a writ of habeas corpus. The petitioner claims that the court (1) abused its discretion in denying his petition for certification to appeal, and (2) improperly concluded that he was not deprived of the effective assistance of appellate counsel and prior habeas counsel. We dismiss the petitioner's appeal.

The underlying facts were set forth in this court's opinion in *State* v. *Talton*, 63 Conn. App. 851, 779 A.2d 166, cert. denied, 258 Conn. 907, 782 A.2d 1250 (2001), in which this court affirmed the trial court's judgment of conviction. This court determined that the jury reasonably could have found the following facts: "On March 22, 1997, at approximately 8:30 p.m., a shooting occurred at the Quinnipiac Terrace Housing Complex . . . in New Haven. As a result, the victim, Tyrone Belton, died after receiving a single gunshot wound to the chest. A friend of the victim, Tacumah Grear, witnessed the shooting and the events that had led to the shooting." Id., 853.

There were two assailants, one wearing a camouflage mask and the other wearing a hood pulled tightly over his head. Grear saw the hooded man point a gun at Belton and fire it. After the assailants fled, the police arrived and questioned Grear. Grear chose not to identify the assailants, even though he knew both of them prior to the night in question and recognized the men as the petitioner and the petitioner's brother. A few days later, however, Grear informed the police that the petitioner had been the shooter and that the petitioner's brother had been the accomplice. Id., 854. The petitioner was arrested, tried before a jury and convicted of murder, conspiracy to commit murder, criminal possession of a firearm and carrying a pistol without a permit. Id., 852.

On direct appeal, the petitioner claimed, inter alia, that he was deprived of a fair trial because the trial court improperly allowed uniformed correction officers to be present during jury selection. Id., 853. The petitioner was represented by Richard E. Condon, Jr., a special deputy assistant public defender. This court declined to address the merits of that claim, however, because the record was inadequate. The record was devoid of any detail with regard to the correction officers' behavior or their proximity to the petitioner. Without that information, this court concluded that any decision it made respecting that claim would be entirely speculative. Id., 861.

Following the petitioner's unsuccessful appeal, the petitioner's first habeas counsel, Sebastian O. DeSantis,

filed a petition for a writ of habeas corpus. The petitioner claimed that his trial counsel, Lawrence Hopkins, provided ineffective assistance because he failed to investigate properly and to present an alibi defense. The first habeas court, *Fuger, J.*, denied the petition, and this court affirmed the judgment. *Talton* v. *Commissioner of Correction*, 84 Conn. App. 608, 854 A.2d 764, cert. denied, 271 Conn. 930, 859 A.2d 585 (2004).

Subsequently, the petitioner filed his second petition for a writ of habeas corpus, the present action, alleging that Condon and DeSantis rendered ineffective assistance on direct appeal and during the first habeas proceeding, respectively. Specifically, he claims that Condon's representation was deficient because he "failed to file a motion for rectification to create an appellate record" regarding the location of correction officers during the criminal trial. With respect to DeSantis, the petitioner claims that his representation was deficient because he failed to challenge Hopkins' failure to create a record regarding the location of the correction officers during the criminal trial.[1]

The matter was tried before the present habeas court (second habeas court), *Newson, J.*, the morning of May 2, 2013. The second habeas court heard testimony from DeSantis and the petitioner. The petitioner submitted one exhibit, a copy of an excerpt from the transcript of one day of jury selection during his criminal trial. The respondent, the Commissioner of Correction, submitted six exhibits, some of which related to disciplinary violations committed by the petitioner during his period of incarceration. After the parties rested, counsel made brief closing arguments. The court then took a recess and reconvened at noon to give its oral ruling.

In its ruling, the second habeas court made the following determinations: (1) the petitioner's only exhibit "merely references the fact that there are correction officers" in the courtroom; (2) the petitioner "failed to meet his burden of proof to show that [Condon's] performance was in any way deficient or that [the petitioner] was in any way prejudiced because . . . he's failed to show by any reasonable basis that appellate counsel could have [filed a motion for rectification], and he's failed to show what, if anything, would have been the result of this information, had it come forward"; (3) with respect to the claims against DeSantis, his prior habeas counsel, the petitioner was required to prove that both DeSantis and Hopkins were ineffective, and he "failed to prove . . . that either counsel was ineffective as to any of the claims presented"; (4) "the minimal evidence that was presented here was the petitioner's claim that there were correction officers sitting behind [him]"; (5) the evidence presented failed to establish that the mere presence of correction officers in the courtroom violated the petitioner's constitutional rights; (6) accordingly, the petitioner failed to demon-

strate that Hopkins' performance or DeSantis' performance was deficient for failure to vigorously address the issue; (7) DeSantis testified that he believed that he must not have raised the issue during the first habeas proceeding because he believed it was not a viable issue; and (8) the petitioner additionally failed to prove that he was prejudiced by the alleged failures of DeSantis or Hopkins. For those reasons, the second habeas court denied the petitioner's second petition for a writ of habeas corpus. Subsequently, the second habeas court denied the petition for certification to appeal from the judgment, and this appeal followed.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further . . . .

"We examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Day* v. *Commissioner of Correction*, 151 Conn. App. 754, 757–58, 96 A.3d 600, cert. denied, 314 Conn. 936, 102 A.3d 1113 (2014).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy two requirements. "First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable. . . . A reviewing court need not address both components of

the inquiry if the [petitioner] makes an insufficient showing on one." (Citation omitted; internal quotation marks omitted.) *Ramey* v. *Commissioner of Correction*, 150 Conn. App. 205, 209, 90 A.3d 344, cert. denied, 314 Conn. 902, 99 A.3d 1168 (2014). "When a petitioner is claiming ineffective assistance of appellate counsel, his burden is to prove that there is a reasonable probability that but for appellate counsel's error, the petitioner would have prevailed in his direct appeal." *Charles* v. *Commissioner of Correction*, 112 Conn. App. 349, 351, 962 A.2d 868, cert. denied, 290 Conn. 922, 966 A.2d 235 (2009).

With this standard in mind, we look to the petitioner's first claim that Condon failed to provide effective assistance of counsel because he did not file a motion for rectification of the record when he represented the petitioner in the direct appeal. Specifically, the petitioner argues that Condon should have attempted to augment the record because "the record needed to contain, at a minimum, evidence of the number of officers present in the courtroom and their proximity to the [petitioner]." By failing to obtain such information, it is claimed that Condon should have known that the Appellate Court would find the record inadequate and decline to review that claim.

We conclude that the second habeas court properly determined that the petitioner failed to prove that Condon's failure to file a motion for rectification or augmentation of the record constituted deficient performance or that the petitioner's defense had been prejudiced at the criminal trial.[2] As noted by the court, the only evidence presented during the second habeas trial regarding the location of the correction officers was the petitioner's exhibit indicating that two or three correction officers were coming in and out of the courtroom and the petitioner's testimony that two to three correction officers were sitting directly behind him.[3] The petitioner, having been present during jury selection and the trial, was in a position to give a detailed account of the circumstances surrounding the placement and behavior of the correction officers. He provided nothing more than what was stated by the court, and no other witness provided additional information with respect to this issue.[4]

The petitioner has failed to satisfy his burden of proof in this matter because his evidence that two to three correction officers were in close proximity to the petitioner in the courtroom simply is insufficient for him to prevail. "Whether the presence of security personnel in a courtroom during trial was so prejudicial to the defendant as to deprive him of his right to a fair trial is decided on a case-by-case basis. . . . It is not the sort of inherently prejudicial practice that, like shackling,[5] should be permitted only where justified by an essential state interest specific to each trial. . . . While shack-

ling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence." (Citations omitted; footnote added; internal quotation marks omitted.) *State* v. *Higgins*, 265 Conn. 35, 76, 826 A.2d 1126 (2003). For these reasons, the petitioner's claim with respect to Condon, his appellate counsel, fails.[6]

The petitioner's second claim of ineffective assistance is directed against his prior habeas counsel. He argues that DeSantis' representation was deficient because he failed to challenge Hopkins' failure to create a record regarding the location of the correction officers during the criminal trial.

With respect to a claim of ineffective assistance of prior habeas counsel, a petitioner is required "to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. . . . [T]he petitioner will have to prove that . . . the prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . . Therefore, as explained by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel . . . must prove both (1) that his appointed habeas counsel was ineffective, *and* (2) that his trial counsel was ineffective. . . .

"Furthermore, for any ineffective assistance claim, we also are cognizant that the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Emphasis in original; internal quotation marks omitted.) *Edwards* v. *Commissioner of Correction*, 141 Conn. App. 430, 438–39, 63 A.3d 540, cert. denied, 308 Conn. 940, 66 A.3d 882 (2013).

In the present case, DeSantis testified at the second habeas trial. Counsel for both parties questioned him as to the reason that he failed to include a claim in the

first petition for a writ of habeas corpus that Hopkins' representation was deficient because he did not create an adequate record concerning the location of the correction officers in the courtroom. DeSantis testified that in determining which issues to raise in a habeas case, he meets with the client, reviews trial counsel's file, obtains and reviews the trial court record, obtains and reviews the appellate record and decision, and reviews all of the transcripts. He also testified that he tends to include as many issues as he can in a habeas petition, knowing that the issues can be narrowed as the matter progresses. In this case, DeSantis testified that after conducting his investigation, he brought all claims that he believed were colorable claims. The second habeas court, in discussing the performance of DeSantis, expressly stated in its ruling that "habeas counsel indicated that he remembers the matter and believes that he must not have raised it because after reviewing it, he believed it not to be a viable issue."

The decision of DeSantis not to include this particular claim in the first habeas petition clearly "falls into the category of trial strategy or judgment calls that we consistently have declined to second guess." (Internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 132, 10 A.3d 1079, cert. denied, 300 Conn. 919, 14 A.3d 333 (2011). Moreover, for the reasons previously discussed in connection with the petitioner's claims against Condon for failure to address the correction officers issue, we likewise conclude that the petitioner has failed to prove that any alleged errors by DeSantis and Hopkins prejudiced his defense. Accordingly, the petitioner's claim against his prior habeas counsel fails.

Upon our examination of the record and briefs, as well as the court's resolution of the issues presented in the habeas petition, we are not persuaded that the court abused its discretion in denying the petition for certification to appeal. The petitioner has not demonstrated that the issues presented are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions are adequate to deserve encouragement to proceed further. See *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991); *Simms* v. *Warden*, supra, 230 Conn. 616.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] Although the petitioner's operative petition included other claims of deficient performance with respect to Condon and DeSantis, the petitioner expressly limited his claim to alleged deficiencies regarding the issue of the presence of the correction officers during his criminal proceeding. During his closing argument in the second habeas trial, counsel for the petitioner stated: "The issue—the sole issue is the location of the correction officers during the course of [the petitioner's] trial. [DeSantis] did not address the fact that [Hopkins] did not lay a foundation or lay a record for the Appellate Court to make . . . an intelligent decision as to whether the location of these correction officers was raising prejudice in the minds of the jury. The

same would be said for [Condon], who did not seek rectification to try to set the stage as to . . . where the correction officers were at that time.”

In the petitioner's appellate brief, he makes the statement that “he was denied a fair trial because of the prejudicial effect of being placed in shackles and surrounded by officers in front of the jury . . . .” Although such allegations were made in the operative petition, habeas counsel did not pursue those claims during the second habeas trial. The petitioner did not testify at the second habeas trial that he had been shackled and surrounded by officers in front of the jury. The sole claim was that the mere presence of the correction officers in the courtroom in close proximity to the petitioner deprived him of a fair trial. The petitioner testified only that there were two to three correction officers sitting behind him. There was no other evidence relative to the behavior or location of the correction officers or whether they were armed or uniformed.

[2] The petitioner argues that the second habeas court made the finding that “Condon could not have corrected the record on appeal to reflect this information” and that such a finding was “clearly erroneous.”

The court made the following statements in its ruling: “There's no proof here that appellate counsel could have even rectified the record or gotten these things placed on the record. This is—it sounds like, at least from the evidence that was presented to this court, this was information that was never, in fact, placed on the record.

“Where one thinks of rectification, again, it's mostly things that are either—were placed on the record and were incorrect; things that the court failed to rule on, although they were placed before the court such as a motion where maybe the court rules on three of the issues raised and forgets to do the fourth, and things of that sort.

“Here, we're talking about events, at least from the limited evidence that was presented before the court, that were possibly never addressed on the record other than this conversation where [Hopkins] mentions there are [correction officers] coming in and out of the courtroom.”

Aside from whether the court's statements with respect to a motion for rectification or augmentation of the record may have been inaccurate, it is clear from a reading of the entire ruling that the court's questioning of the procedural vehicle proposed by the petitioner to elicit the information about the correction officers did not form the basis of the court's denial of the petition. Moreover, and more significantly, the court properly focused on the petitioner's failure “to show, what, if anything, would have been the result of this information, had it come forward. Would it have changed [the] appeal at all, and that is also his burden . . . .” The record reflects that no evidence was presented to show what information would have been forthcoming if an evidentiary hearing had been held on a motion to augment the record and whether that information would have led to a different result in the direct appeal. See *Young* v. *Commissioner of Correction*, 120 Conn. App. 359, 375, 991 A.2d 685 (petitioner did not demonstrate reasonable probability existed that, but for counsel's failure to request articulation, he would have prevailed on appeal), cert. denied, 297 Conn. 905, 995 A.2d 635 (2010).

[3] The petitioner states that his testimony is uncontroverted with respect to the location of the correction officers. Even if uncontroverted, however, the habeas court was not required to credit the petitioner's testimony. “[O]rdinarily the trial court has discretion to reject even uncontested evidence, on the theory that the fact finder is uniquely well situated to make determinations of witness credibility. . . . The fact that certain evidence is not controverted does not mean that it must be credited.” (Citations omitted; internal quotation marks omitted.) *State* v. *DeMarco*, 311 Conn. 510, 521 n.4, 88 A.3d 491 (2014).

[4] Although the petitioner was not required to call them as witnesses, we note that he did not call Hopkins or anyone else who had been present during his criminal trial to testify as to the security measures that had been employed. Condon did not testify at the second habeas trial and, accordingly, we do not know his reason for not filing a motion to rectify or augment the record.

[5] As noted in *State* v. *Woolcock*, 201 Conn. 605, 617 n.5, 518 A.2d 1377 (1986), “[i]t has even been said that [a]n appellate court will not find error on the ground that the defendant was shackled unless it is shown that the jury saw the shackles.” (Internal quotation marks omitted.) On appeal, the petitioner has not made the claim that he was shackled in front of the jury. It may be that shackles, if any, were removed before the jurors entered the courtroom or that the petitioner was positioned in such a way that shackles

were not visible to the jury. At any rate, shackling is not an issue before us.

[6] Moreover, the evidence presented by the respondent at the second habeas trial indicated that the petitioner had been placed at Northern Correctional Institution, the state's most secure correctional institution, because of disciplinary violations during his period of incarceration. Some of those violations involved threatening and assaults on correction officers. The second habeas court referred to the petitioner's history of disciplinary violations when his counsel was arguing that the defense had been prejudiced by the presence of the correction officers in the courtroom. The court asked: "But, I mean, just for purposes of argument, what's the prejudice? You have a person who's admittedly in Northern because of disciplinary issues, in the highest security prison we've got in the state, he's in on murder charges, and he's representing himself at trial."

———————————————